UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 6:08-CV-339-KKC

TAMMY S. JONES                                                                    PLAINTIFF

v.                                    **OPINION AND ORDER**

MICHAEL J. ASTRUE,
COMMISSIONER OF  SOCIAL SECURITY                           DEFENDANT

* * * * * * * * * * * * * *

This matter is before the Court on the cross motions for summary judgment filed by

Plaintiff Tammy S. Jones ("Jones") and Defendant Michael J. Astrue, Commissioner of Social

Security ("the Commissioner").  Rec. No. 6, 7.  In support of her motion for summary judgment,

Jones asserts that the ALJ improperly rejected the opinion of her treating physician and that the

hearing decision failed to provide sufficient justification for doing so.  The Commissioner

responds that the decision denying disability benefits is supported by substantial evidence and

complied with all applicable procedural rules.  For the reasons set forth below, the Court will

GRANT the Commissioner's motion for summary judgment.

I.      **BACKGROUND**

Jones filed an application for Disability Insurance Benefits on September 6, 2006 alleging

a period of disability beginning on July 26, 2005.  AR 922.  The claim was denied initially and

upon reconsideration.  AR 922.  On September 21, 2007, Jones appeared and testified at a

hearing in Middlesboro, Kentucky before an Administrative Law Judge ("ALJ").  *Id.*  A

vocational expert ("VE") also appeared at the hearing and testified.

Jones claims that she became disabled in July 2005 because of Sjorgen's syndrome, a

back impairment, carpal tunnel syndrome, migraine headaches, problems with her vision, muscle weakness and rheumatoid arthritis.  AR 58-59, 61-63, 163, 180.  At her hearing, Jones indicated that she was experiencing tingling, numbness and pain in her joints and back.  AR 59-62.  She also  claimed her impairments affect her ability to walk, stand and sit, and require her to lie down multiple times per day.  AR 60-64.  Jones also explained that her arthritis affects her ability to hold things with her hands.  AR 61.

On January 15, 2008 the ALJ issued a decision finding that Jones is not disabled under Sections 216(I) and 223(d) of the Social Security Act.   AR 933.  At the time of the ALJ's decision, Jones was forty-one years old, had a high school education, and past relevant work experience as an assistant manager, deli worker and waitress.  AR 53, 54-57, 163, 181, 187, 919-933.  On January 18, 2008, Jones filed a request to have the ALJ's decision reviewed, which the Appeals Council denied.  AR 1-4, 31-36.  As a result, the ALJ's decision became the final decision of the Commissioner.  Because Jones properly exhausted all available administrative remedies, this matter is now ripe for judicial review pursuant to 42 U.S.C. § 405(g).

## II.    DISCUSSION

### A. Standard of Review

When reviewing decisions of the Social Security Agency, the Court is commanded to uphold the Agency decision, "absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record."  *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (internal quotation marks and citation omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 285-86 (6th Cir. 1994).

This Court is required to defer to the Agency's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). A district court may not review the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. App'x 462, 468 (6th Cir. 2006); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Where the Commissioner adopts the ALJ's opinion as his own, the Court reviews the ALJ's opinion directly. *See Sharp v. Barnhart*, 152 Fed. App'x 503, 506 (6th Cir. 2005).

**B. Overview of the Process**

Under the Social Security Act, disability is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). The disability determination is made by an ALJ using a five step sequential evaluation process. *See* 20 C.F.R. § 416.920. The claimant has the burden of proving the existence and severity of limitations caused by her impairment and that she is precluded from doing past relevant work for the first four steps of the process. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). However, the burden shifts to the Commissioner for the fifth step. *Id.*

At the first step, the claimant must show she is not currently engaging in substantial

gainful activity.  *See* 20 C.F.R. § 416.920(a)(4)(I); 20 C.F.R. § 404.1520(b).  At the second step,

the claimant must show that she suffers from a severe impairment or a combination of

impairments that are severe.  *See* 20 C.F.R. § 404.1520(c).  At the third step, a claimant must

establish that her impairment or combination of impairments meets or medically equals a listed

impairment.  *See* 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404.1525; 20 C.F.R. § 404.1526.

Before considering the fourth step, the ALJ must determine the claimant's residual

functional capacity ("RFC").  *See* 20 C.F.R. § 404.1520(e).  The RFC analyzes an individual's

ability to do physical and mental work activities on a sustained basis despite any existing mental

or physical impairments.  In determining the RFC, the ALJ must consider all of the claimants

impairments, including those which are not severe.  *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. §

404.1545.  Once the ALJ has determined the claimants RFC, he must determine whether the

claimant can perform the requirements of her past relevant work.  *See* 20 C.F.R. § 404.1520(f).

At the fifth step, the burden shifts to the Commissioner to establish that there is sufficient

work in the national economy that the claimant can perform given her RFC, age, education and

work experience.  *See* 20 C.F.R. § 404.1520(g); 20 C.F.R. § 404.1512(g); 20 C.F.R. §

404.1560(c).

**C. The ALJ's Decision**

At step one, the ALJ determined that Jones has not engaged in substantial gainful activity

since July 26, 2005, the alleged onset date.  AR 924.  At the second step, Jones was found to

have the combined severe impairments of bilateral carpal tunnel syndrome, lumbar disc disease,

Sjorgen's Syndrome and a history of arthralgias and myalgias.  AR 924.  However, at step three,

the ALJ determined that Jones does not have an impairment or combination of impairments that

meets or medically equals a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 928.

After considering all of the medical evidence in the record, the ALJ then determined that Jones has the RFC to:

> perform light work that affords a sit/stand option and requires no concentrated exposure to vibration, unprotected heights or hazardous machinery; no more than frequent bending, stooping, crouching, crawling, kneeling or climbing of ramps and stairs; and no more than occasional climbing of ladders, ropes or scaffolds.

AR 928-29.  At step four, the ALJ then found that Jones is unable to perform any of her past relevant work.  AR 931.  Finally, the ALJ found that based on Jones' age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform.  *Id.*  In making this determination, the ALJ relied on testimony by a VE.

As a result, the ALJ determined that Jones has not been under a disability as defined by the Social Security Act from July 26, 2005 through the date of the decision.  AR 932.

**D. Analysis**

**1. Dr. Colton's Treating Source Opinion**

Jones first asserts that the ALJ improperly rejected the opinion of Dr. Colton in determining that her various impairments including rheumatoid arthritis, bilateral carpal tunnel syndrome, low back pain and Sjorgen's syndrome did not prevent her from performing light work, subject to limitations set forth in her RFC.  The Court disagrees.

Jones first appeared at the Cloverfork Clinic on July 5, 2001 after passing out and was suffering from headaches and nausea.  AR 551.  When she returned on August 6, 2001, she complained of joint pain.  However examination revealed normal gait and station, no

misalignment, asymmetry, crepitation, defects, tenderness, masses, effusions, decreased range of

motion, instability, atrophy or abnormal strength in spine or upper extremities.[1]  When Jones

returned on August 20, 2001, physical examination revealed no wrist, hand or foot, or PIP

swelling or tenderness and doubt was expressed about a prior possible diagnosis of rheumatoid

arthritis.  AR 556.[2]  On October 6, 2003 Jones complained of bad headaches, an impression of

tension headaches was rendered and she was prescribed Zoloft and Ibuprofen.  AR 563-64.  By

October 27, 2003, Jones reported doing much better on her medications and claimed she was no

longer having headaches and was sleeping well.  AR 564.[3]

On August 10, 2004, Jones complained of pain and swelling in her joints.  AR 566.

However, physical examination revealed full range of motion in her shoulders, elbows, wrists

and hands with no evidence of edema, redness or warmth.  *Id.*  An impression of arthralgia was

given and Jones' prescription for Ultram was renewed and she was directed to return if there was

no improvement in one week.  AR 566-67.  On August 13, 2004 Jones claimed numbness in both

hands up to her elbows.  AR 568.  However, physical examination found good range of motion in

her arms, good pulses bilaterally and negative Phalen's and Tinel tests.[4]  *Id.*  On August 20,

2004, lab results showed an elevated rheumatoid factor and positive ANA and Jones was referred

---

[1] However, Jones was assessed as having arthralgia (joint pain) and prescribed Ultram.  AR 555.

[2] Jones did not appear for her next appointment on September 25, 2001.  AR 557.  From October 22, 2001 until October 6, 2003 there are no treatment records except for several visits for cold/flu and one visit for an influenza vaccination.  AR 558-61.

[3] Jones did not keep her appointment on January 27, 2004 and there is a treatment gap until August 10, 2004.  AR 565.

[4] Dr. Colton's treatment notes did indicate that Jones had altered sensation in both hands and in her fingertips.  AR 568.

to a rheumatology consultation.  AR 570.

Jones was referred for nerve conduction studies on September 9, 2004.  AR 571.  Follow up notes from October 10, 2005 indicate that the studies were consistent with bilateral carpal tunnel syndrome.  AR 572.  Dr. Colton also assessed unspecified arthritis, gave Jones bilateral wrist splints to wear at night, and referred her for neurological and rheumatology consultations.[5] On October 25, 2004, Jones returned to Cloverfork following a motor vehicle accident and reported back and hip pain.  AR 573.  However, physical examination found only minimal tenderness in her lumbar muscles, no palpable spasms and pretty good range of motion.  *Id.*  In her hips, range of motion was good with no pain.  Neurologically, no decrease were observed in reflexes, strength or sensation.  An impression of low back sprain/strain was rendered and Jones was given anti-inflammatories and Flexeril and referred to physical therapy.  While Jones was undergoing physical therapy, she made several visits to Cloverfork Clinic which were unrevealing.  By November 30, 2004, Jones had met all of her short term physical therapy goals and the physical therapist stated that Jones would benefit from returning to work and performing work related activities.[6]

On December 3, 2004, Dr. Colton noted that Jones had excellent range of motion in her back, negative straight leg raise and good reflexes.  AR 579.  Dr. Colton also did not disagree with the physical therapist's assessment that Jones could return to work.  Dr. Colton also recommended that Jones continue her home exercise program.  *Id.*  On April 12, 2005, Jones

---

[5]  As the ALJ pointed out in his hearing decision, there is no evidence that Jones complied with either referral.  AR 925.  Furthermore, the record indicates that Jones did not wear the bilateral wrist splints as directed, claiming doing so made her symptoms worse.

[6] The physical therapist also noted that Jones could perform most lifting activities.

7

returned to Cloverfork Clinic claiming to have been diagnosed by Dr. Pampati with rheumatoid arthritis and Dr. Colton accordingly gave an impression of rheumatoid arthritis and Sjorgen's syndrome. However, Dr. Pampati's treatment notes do not appear to support this assessment.[7] However, Dr. Pampati's treatment notes do not appear to support this assessment. The remainder of Dr. Colton's 2005 treatment notes are unrevealing.

Jones returned to Cloverfork on March 27, 2006 and Dr. Colton found decreased range of motion in her back, straight leg test was negative and Jones was assessed as having arthritis and serious otitis. AR 589. However, on August 4, 2006 Dr. Colton observed that Jones had a good range of motion in her back, but observed pain and diffuse tenderness in all extremities. AR 593. The remaining medical records from 2006 are generally unrevealing.

On February 7, 2007, Jones had full range of motion in her neck (with pain), complete range of motion in her left shoulder and good muscle strength in the left arm and shoulder. AR 817. An impression of Sjorgen's syndrome and cervical strain was given. *Id.* By June 5, 2007, Jones was found to have good range of motion in all of her joints. AR 903. The remainder of the 2007 treatment records from Dr. Colton and Cloverfork Clinic are unrevealing.

---

[7] Dr. Pampati's records do not reflect a diagnosis of rheumatoid arthritis. Jones was first examined by Dr. Pampati on March 31, 2005 and treatment notes from that visit indicate that Jones had a normal gait and station, was neurologically normal and that there was no evidence of acute or active synovitis. AR 699-701. Jones was not assessed as having rheumatoid arthritis but as having diffuse arthralgias/myalgias, low back pain and a history of carpal tunnel syndrome. *Id.* Jones was directed to follow up within one to two months but did not return until September 27, 2005. AR 697. During this visit, Dr. Pampati's findings remained unchanged and an impression of Sjorgen's Syndrome was rendered. During follow up visits in January and May 2006, Dr. Pampati gave an impression of stable SICCA Syndrome with no evidence of active or acute synovitis. AR 694-96. Furthermore, Jones indicated that her medications were helping her well but that she had run out. AR 694. On September 5, 2006, Dr. Pampati observed that Jones had minimal tenderness in her wrists, MCP and PIP joints but that all other peripheral joints revealed no evidence of acute or active synovitis. AR 692. The only reference to rheumatoid arthritis in Dr. Pampati's treatment notes is contained in a treatment chart which under major problems reads "09/05/06 EARLY RA?" AR 688. As the ALJ recognized, there is no further evidence of rheumatology treatment after this period. AR 927.

Dr. Colton completed a functional capacity assessment of Jones on November 12, 2007. AR 915-18.  Dr. Colton opined that Jones could only lift and carry eight pounds occasionally and fifteen pounds frequently.[8]  AR 916.  Dr. Colton also limited Jones to standing and walking for one hour total and thirty minutes without interruption during a normal workday.  *Id.*  Dr. Colton also opined that Jones could only sit for one to two hours per work day and only one hour without interruption.  AR 917.  In addition, Jones was limited to performing no more than occasional climbing and balancing and should never stoop, crouch, kneel, or crawl.  *Id.*  She was also limited in her ability to handle, feel and push/pull.  *Id.*

The ALJ's decision gave Dr. Colton's functional capacity assessment only negligible consideration because he found it was internally inconsistent with a functional capacity evaluation submitted hy Jones' physical therapist Holly Johnson[9] and was contradicted by the longitudinal objective medical findings showing an overall lack of significant joint abnormalities, no evidence of neurological compromise and no more than mild tenderness on examination.  AR 931.

Under applicable Social Security Administration ("SSA") regulations, opinions of treating physicians such as Dr. Colton are entitled to controlling weight if they are (1) "well supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) not inconsistent with the other substantial evidence in [the] case record."  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)(quoting 20 C.F.R. § 404.1527(d)(2)).  If the opinion of a

_____

[8] This finding is internally inconsistent.  An individual who can only carry eight pounds occasionally would not be able to carry a greater weight (fifteen pounds) frequently.

[9] Physical therapist Johnson opined that Jones could work at the sedentary physical demand level.  AR 905-14.

9

treating source is not entitled to controlling weight, the ALJ must still apply certain factors to

determine what weight the opinion should be given.[10]  *Id.*  These factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the
> nature and extent of the treatment relationship; (3) the supportability of the opinion, with
> respect to relevant evidence such as medical signs and laboratory findings; (4) the
> consistency of the opinion with the record as a whole; (5) the specialization of the
> physician rendering the opinion; and (6) any other factor raised by the applicant.

*Meece v. Barnhart*, 192 Fed. App'x 456, 461 (6t Cir. 2006)(unpublished)(quoting 20 C.F.R. §§

404.1527(d)(2)-(d)(6).

The ALJ's RFC determination and his decision to discount Dr. Colton's medical source

statement are supported by substantial evidence.  As the ALJ pointed out in the hearing decision,

the objective medical evidence does not support the extreme limitations imposed by Dr. Colton.

Dr. Colton's own treatment records show that while Jones may have dealt with problems related

to carpal tunnel syndrome, low back pain and arthritis, her findings do not justify a disability

determination.

With regard to rheumatoid arthritis, while Jones was found to have an elevated RA factor

and positive ANA, Dr. Colton's own treatment notes and the treatment notes from Dr. Pampati

continually show no acute or active synovitis.  Telling, Dr. Pampati a rheumatologist did not

diagnose Jones with rheumatoid arthritis.  Jones also acknowledged during her hearing testimony

that Dr. Pampati never imposed any work related restrictions.  Furthermore, the medical evidence

---

[10] Even when a treating physician's opinion is not entitled to controlling weight, it is nonetheless generally
entitled to more weight than other medical opinions because:

> these [treating] sources are likely to be the medical professionals most able to provide a detailed
> longitudinal picture of [the applicant's] medical impairment(s) and may bring a unique perspective to the
> medical evidence that cannot be obtained from objective medical findings alone or from reports of
> individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(d)(2).

allows for the inference that Dr. Colton's impression of rheumatoid arthritis was based on statements made by Jones that Dr. Pampati had diagnosed her with rheumatoid arthritis. Based on the evidence in the record, there is no indication that Dr. Pampati made such a diagnosis.

With regard to bilateral carpal tunnel syndrome and Jones allegations of back pain, the ALJ correctly pointed out that many of the examinations showed no more than mild tenderness and good range of motion in Jones' wrists, hands and back. During Jones last visit with Dr. Pampati in September of 2006, only minimal tenderness in Jones' wrists, MCP and PIP joints was observed. In addition, there was no tenderness or evidence of acute or active synovitis in all other peripheral joints. Physical therapy records following Jones motor vehicle accident also show that her back pain was adequately dealt with and that she would benefit from returning to work and could perform all work related activities. Dr. Colton did not express disagreement with this assessment in her treatment notes and only recommended that Jones continue a home exercise program.

The record also indicates that Jones failed to follow recommended treatments. For example, Dr. Hoskins recommended physical and injective therapy in 2005, but there is no evidence in the record that Jones complied with either request. Jones also did not comply with at least one rheumatology consultation referral and did not utilize her bilateral wrist splints as directed.

Finally, Jones' testimony supports the ALJ's decision to give only negligible consideration to the limitations imposed by Dr. Colton. Dr. Colton indicated that Jones could only stand/walk for one hour in an eight hour work day and sit for approximately two hours. However, Jones testified that her impairments require her to lie down three to four times per day

11

for forty to sixty minutes at a time.  This testimony is inconsistent with Dr. Colton's standing/walking and sitting limitations and the inconsistency supports the ALJ's determination. Furthermore, Jones daily activities do not indicate a person with the extreme limitations that Dr. Colton would impose.  Jones testified that she drives three times per day, goes shopping and prepares simple meals and can perform chores around her house.[11]

Jones also asserts that the ALJ erred by giving greater weight to the opinions of state agency non-examining physicians than to Dr. Colton's opinion.  However, as discussed above, Dr. Colton's opinion was not entitled to significant deference because it was not supported by the objective medical evidence and his own treatment notes.  The ALJ was clearly required to consider the opinions of the state agency non-reviewing physicians.  *See* 20 C.F.R. 404.1527(f)(2)(i).[12]  Furthermore, the ALJ's decision indicates that these opinions were only accepted to the extent they were consistent with the objective medical evidence in the record.

Jones reliance on the Sixth Circuit's unpublished decision in *Fisk v. Comm'r of Soc. Sec.*, 253 Fed. App'x 580 (6th Cir. 2007)(unpublished) is also misplaced.   In that case, the Sixth Circuit recognized in certain circumstances greater weight may be given to opinions of state agency non-examining physicians than to opinions of treating physicians.[13]  *Id.* at 585.  However, the Sixth Circuit explained that where the treating source had referred the claimant to numerous

---

[11] Jones did testify that she performed some of these activities with the help of her son.

[12] While ALJs are not bound by findings made by state agency non-reviewing physicians, these sources are "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of state agency...physicians....as opinion evidence...." 20 C.F.R. § 404.1527(f)(2)(i).

[13] SSR 96-6p recognizes that "[i]n appropriate circumstances, opinions from State agency medical...consultants may be entitled to greater weight than opinions of treating or examining sources."  Soc. Sec. Rul. 96-6p, 1996 SSR LEXIS 3, at *6-7, 1996 WL 374180, at *3 (1996).

sources and made recommendations for specialists opinions "we require some indication that the ALJ at least considered these facts before giving greater weight to an opinion that is not based on a review of a complete case record." *Id.* Jones correctly out that the state agency treating physicians failed to consider the functional capacity assessments by Dr. Colton and the physical therapist and later treatment records from Cloverfork Clinic in rendering their opinions. As a result, she claims that their opinions should not have been given greater weight than Dr. Colton's opinion. However, unlike *Astrue*, in this case the ALJ clearly considered the assessments by Dr. Colton and the physical therapist and the subsequent treatment records (which do not appear to support a finding of disability) in determining the appropriate weight to give the opinions of the state agency reviewing physicians and Dr. Colton.

As a result, the Court finds that the ALJ did not err by giving greater weight to the opinions of state agency reviewing physicians - to the extent that those opinions were consistent with the objective medical evidence - than to the opinions of Jones' treating physician. The ALJ properly determined that Dr. Colton's opinion was entitled to only negligible consideration because it was inconsistent with the medical evidence in the record including Dr. Colton's own treatment notes. The Court also finds that the ALJ's RFC determination is supported by substantial evidence in the record.

## 2. "Good Reasons" requirement

Jones' final argument is that the ALJ erred by failing to give good reasons for rejecting Dr. Colton's opinion. Social security regulations provide that a hearing decision "will always give good reasons for the weight we give [the claimant's] treating source's opinion." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d at 544. This requirement is clarified by Social Security Ruling

13

96-2p which explains that a decision denying benefits:

> *must contain specific reasons* for the weight given to the treating source's medical opinion, supported by the evidence in the case record and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9, at *11-12, 1996 WL 374188, at *5 (1996). In this case, the ALJ's decision met these procedural requirements. The ALJ specified what weight he was giving Dr. Colton's opinion. In addition, he gave specific reasons why this weight was given. This reasons have been discussed above. Finally, these reasons and the decision to discount Dr. Colton's opinion are supported by substantial evidence in the record. As a result, the ALJ complied with this procedural requirement and remand is not required.

## III.   CONCLUSION

For the reasons set forth above, the Court finds that the ALJ's decision is supported by substantial evidence. Accordingly, the Court **HEREBY ORDERS** that:

(1)    Plaintiff's Motion for Summary Judgment (Rec. No. 6) is **DENIED;**

(2)    Defendant's Motion for Summary Judgment (Rec. No. 7) is **GRANTED;** and

(3)    The administrative decision of the Commissioner will be **AFFIRMED** by a separate judgment entered this date.

Dated this 5th day of February, 2010.



**Signed By:**

*Karen K. Caldwell*

**United States District Judge**

14